## IRVIN *v.* BUCKLES.

[No. 18,261.   Filed October 5, 1897.]

PARTITION.—*Judgment.*—A decree of partition is *res adjudicata* that the parties thereto were co-tenants in the whole of the land involved in the decree, and estops them from denying such co-tenancy. *p. 397.*

SAME.—*Real Estate Included by Mistake.—Judgment.— Collateral Attack.*—A widow was the owner of forty acres of land by reason of the fact that she and her husband at the time of his death held the same as tenants by entireties. She also owned the undivided one-third interest in the remaining real estate of which her husband died seized. Being ignorant of the fact that at the death of her husband she became the owner in fee simple of the forty acres held by entireties, said tract was included in the real estate described in the petition for partition, and alleged to be owned by plaintiff and defendants as tenants in common. The court found as alleged in the petition, and the widow's statutory one-third was set off out of the other real estate, and the forty acres was included in the part set off to the defendants. When the widow learned of her mistake as to her legal rights she brought suit to quiet her title in the forty-acre tract. *Held,* that she could not thus collaterally attack the decree in partition. *pp. 390–400.*

From the Whitley Circuit Court. *Affirmed.*

*T. R. Marshall, W. F. McNagny* and *P. H. Clugston,* for appellant.

*Andrew A. Adams,* for appellee.

McCABE, C. J.—The appellee sued the appellant to quiet her alleged title in and to forty acres of land in Whitley county.

The issues were tried by the court, resulting in a special finding of the facts, upon which the court stated conclusions of law favorable to the plaintiff, and rendered judgment accordingly.

The conclusions of law are assigned for error. The other errors assigned raise the same question involved in the conclusions of law.

The material facts found are, that in 1876 the land in controversy, by deed of general warranty, was by its owner conveyed to Wayne Scott and wife; that said Wayne Scott died in the year 1881 or 1882 seized of said land with his said wife, leaving surviving him the defendant, his said wife Amanda J., his widow, and Earnest Scott, Austin Scott, Jennie Scott, now Jennie Buckles, the plaintiff, and Nellie Scott, his children and only heirs at law.

That in April, 1883, the defendant filed her petition in the Whitley Circuit Court for partition of the lands of which her husband died seized, making all of said children parties defendant to said suit as his only heirs at law. In said petition she averred that said Wayne Scott died seized of 220 acres of land in the counties of Whitley and Noble and which included and embraced the forty acres now in controversy.

That defendant averred in her said petition that she was the owner in fee simple of the undivided one-third, including the forty acres now in controversy, and that her four children above named who were defendants in said partition suit were the owners in fee simple of the undivided two-thirds thereof, and that they held the same by descent from Wayne Scott as tenants in common.

The defendants in said partition suit being infants, were served with process, and a guardian *ad litem* was appointed for them by the court, and he filed an answer of denial. The court found the allegations of the peti-

Irvin v. Buckles.

tion to be true, that the plaintiff and defendants therein were the owners in fee simple, and tenants in common of the real estate described in the partition complaint, which included the forty acres now in controversy.

The commissioners appointed by the court to make partition met and reported in accordance with the order to them directed, setting off to the plaintiff therein, Amanda J. Scott, as her full interest in said real estate described in the petition, sixty acres of land upon which were the buildings, and set off to the defendants therein, together, one hundred and sixty acres, which included the forty-acre tract now in controversy, which was confirmed by said court at the May term thereof for 1883, and judgment was rendered accordingly.

That immediately after said judgment of partition, said Amanda J. Scott entered into possession and control of the part so set off to her, and has ever since continued to use and occupy the same.

And the defendants therein, also, likewise, entered into the possession and continued to hold the portion set off to them as tenants in common until the month of February, 1893.

That afterwards, in 1893, Jennie J. Buckles, formerly Jennie J. Scott, her husband joining, filed her petition in partition of the real estate so set off to her and her brothers and sisters in the Whitley Circuit Court; that such proceedings were thereupon had as that partition of said land was awarded between said four children, setting off to the plaintiff, Jennie J. Buckles, as her full interest therein among others the forty-acre tract now in controversy. And, thereupon, she took exclusive possession of said forty-acre tract and has ever since continued to exercise acts of ownership over the same.

That in the year 1883, soon after the determination of her partition suit, the defendant herein intermarried with one Hamer Irvin, whose wife she still is; that she is now asserting that she is the owner of said forty-acre tract, now in controversy by virtue of the deed conveying it to her husband and herself as tenants by entireties.

That at the time she brought her said partition suit she was the owner in fee simple of the forty-acre tract in controversy, and the defendants in said suit, her infant children, had no interest therein; that she did not assert her said title in said suit because she was ignorant of her rights, and not from any fraudulent or improper design on her part; that the defendant herein has never conveyed her title in said lands, nor otherwise parted with the same, unless said title has been divested by reason of the facts above set out.

There is no controversy that the conveyance to Wayne Scott and wife vested in them the title in fee simple as tenants by entireties of the forty acres in controversy, and that on the death of one of the tenants the survivor takes the whole estate, and that, in consequence, on the death of Wayne Scott, his widow, by reason of her survivorship, took the whole estate in the forty acres in question in fee simple, and that she thus owned it at the time she brought her suit for partition; but the question, and the sole question is, did the partition suit have the effect to divest that title? If it did not, the conclusions of law are wrong; if it did, they are right.

Appellant's learned counsel contend with earnestness, that a judgment in partition does not settle any question of title, unless the title is put in issue by an appropriate pleading, and there having been no such pleading in said partition suit, the partition decree does not conclude her, nor prevent her from asserting

her title. It is contended that it appears that the manifest object of appellant's partition suit was solely to secure a division of the land, and an allotment of shares; and that where nothing more than partition is sought, no question of title is settled, and that it gives no new title to the parts allotted. In support of this proposition are cited, *Haskett* v. *Maxey*, 134 Ind. 182; *Luntz* v. *Greve*, 102 Ind. 173; *Miller* v. *Noble*, 86 Ind. 527; *Avery* v. *Akins*, 74 Ind. 283; *Thorp* v. *Hanes*, 107 Ind. 324; *Utterback* v. *Terhune*, 75 Ind. 363; *Stephenson* v. *Boody*, 139 Ind. 60.

These cases, with many others decided by this court that might be cited, are cases where it was held that there was no pleading presenting for adjudication any question of title, and for that reason in each case it was held that the decree in partition did not conclude the parties as to the question of title. All of the cases recognize that the question of title may be presented in such a suit by appropriate pleadings, and that the decree thereon will conclude the parties as to the questions of title thus put in issue.

All of the cases above referred to were cases where the parties were tenants in common in fact. And most of them are cases where the tenant whose title was afterwards sought to be treated as settled by the decree, are cases where the tenant was a childless second wife, and it was alleged and adjudged that she held a life estate in the land only, whereas her interest was in fee simple. But whether her title was a fee simple or a life estate, she was in every case a tenant in common with the children and other heirs of her husband.

The only difference in the two kinds of title being in one case, the fee descends to the other heirs at the same instant that the life estate would attach, and in the other, title did not vest in the other heirs until the

death of the wife. The other class of cases included in the citation above, is such as where a widow holding real estate by virtue of a previous marriage, marries again and during such second or subsequent marriage such real estate is sold on a judgment against her, recovered during her second marriage. In such a case it is held that such a sale only vests in the purchaser an estate in the land during the life of such remarried widow. And though the purchaser supposed the title so purchased by him to be in fee simple, yet his pleadings in his partition suit being "such    *    *    * as are ordinarily employed in partition proceedings and only such an assertion of title as was sufficient to entitle appellant to partition;" the decree or judgment of partition is held not to conclude the parties thereto as to the question of title. *Miller* v. *Noble, supra.* In all of the cases in both classes it is held, that while the decree may conclude the parties as to title existing at the time of partition, yet it is not, and cannot be as to after acquired or after accruing titles. That is, where the judgment sets off to the childless second wife or widow one-third for life only, instead of the undivided one-third of her deceased husband's real estate in fee simple, that operates and affects only existing titles. It is true she holds a life estate in the one-third, and she holds more, she holds a fee simple in the same third, and the children of the previous marriage being parties to the partition suit have no interest whatever in that third at the date of the decree, but at her death they will have an interest. They will inherit it in fee simple from her. Therefore, it may well be held that an ordinary partition decree cannot operate upon that title, unless the pleadings specially put that title in issue and it is adjudicated in the judgment. *Thorp* v. *Hanes, supra.*

And the same is true in the other class of cases al-

ready spoken of.  While the doctrine already stated, namely, that an ordinary judgment of partition does not settle or conclude any question of title to the land parted, unless such title is put in issue by the pleadings, yet a consciousness seems to have been expressed in some of the cases that the doctrine has been carried to its utmost limits, and that cases might arise in which a qualification of, or exception to the general rule should prevail.

In *Crane* v. *Kimmer*, 77 Ind. at page 219, it is said: "The remaining question to be decided is, was the title to the land in controversy in issue in the partition proceedings, so as to be *res adjudicata* upon that question? In all cases of partition, the rights and titles of the parties are required to be set forth in the petition. 2 R. S. 1876, p. 344, section 2.  This technically puts in issue the title to the land asked to be divided, and, by an answer in denial or otherwise, the title may be put in issue, and be adjudicated.  *  *  * The decree in a partition suit, however erroneous, if the court had jurisdiction, cannot be attacked collaterally in a suit in ejectment."

In *Powers* v. *Nesbit*, 127 Ind. at pp. 498, 499, this court said: "It is well settled that the title to real estate is not ordinarily in issue in proceedings for partition.  *Davis* v. *Lennen*, 125 Ind. 185, and cases cited.  Whatever else may be said of the soundness of many of these decisions, it must be said that it is our duty to adhere to them, as the rule they declare has become a rule of property.  But, while the rule stated is a settled one, it is equally well settled that title may be put in issue in partition proceedings.  *Isbell* v. *Stewart*, 125 Ind. 112; *McMahan* v. *Newcomer*, 82 Ind. 565, and cases cited; *Luntz* v. *Greve*, 102 Ind. 173; *Thorp* v. *Hanes*, 107 Ind. 324; *Spencer* v. *McGonagle*, 107 Ind. 410; *Woolery* v. *Grayson*, 110 Ind. 149; *Watson* v.

*Camper*, 119 Ind. 60; *L'Hommedieu* v. *Cincinnati, etc.*, *R. W. Co.*, 120 Ind. 435. It seems quite clear that the complaint asserts title, for it not only alleges that the appellees are the owners in fee, but it also specifically states facts showing that such is the nature of their title. This was certainly an assertion of title and a challenge to the appellant to join issue upon that question. * * * The appellant accepted the issue tendered, and the court decreed that the appellees were the owners in fee, so that there was an issue as to the title and an adjudication upon that issue." It was therefore held that the motion for a new trial as of right ought to have prevailed.

In this connection it may be again observed that no person under our statute can have a standing in court to obtain partition of lands, unless he holds the lands as joint tenant or tenant in common with some other person or persons. Section 1200, Burns' R. S. 1894 (1186, R. S. 1881). And it is further provided, that he must set forth in his petition a description of the premises and the rights and titles of the parties interested. Section 1201, Burns' R. S. 1894 (1187, R. S. 1881).

This court has disapproved of a part at least of the above quotation from *Crane* v. *Kimmer*, in *Miller* v. *Noble, supra,* where on pages 529 and 530, it is said: "The appellant presses upon our consideration the case of *Crane* v. *Kimmer*, 77 Ind. 215, and there are some expressions in the opinion which seem to sustain his theory of the law. In so far as the expressions found in that opinion are in conflict with the cases we have cited, they must be deemed to be incorrect statements of the law. The point decided in that case was, that it was not error to admit in evidence the record of the partition proceedings, and that decision is right; but what is said about the title being put in issue and adjudicated in ordinary partition pro-

ceedings is wrong. That title may be put in issue, tried and settled in partition proceedings is true. * * * It is not, however, correct to say that it is necessarily in issue in ordinary partition proceedings, where there are no other pleadings than such as are ordinarily employed, and no other decree than the usual one directing partition. * * * In ordinary partition proceedings, it is only necessary to allege and prove such a title as entitles the party to a division of the land. The adjudication in such a case goes no farther than to declare that such a right is shown as will support partition and to allot the shares to the co-tenants entitled to them."

In *Habig* v. *Dodge*, 127 Ind. at page 37, it is said: "Where the only issue presented by the pleadings is whether or not there ought to be partition of the land among the several alleged owners, according to their respective interests, the title to the land is not in issue. A decree taken upon issues thus made is conclusive as an estoppel, so far as to settle and bind the present interest of all those who are parties according to the terms of the decree, but it does not operate upon or affect, or estop parties from setting up after-acquired titles."

From these authorities it is quite clear that while a decree in an ordinary partition proceeding does not conclusively settle any question of title, yet, it is equally clear from them, that some things are conclusively settled and put at rest by the decree. *Wright* v. *Nipple*, 92 Ind. 310; *Fleenor* v. *Driskill*, 97 Ind. 27. One is, the fact of partition itself, where the court has jurisdiction over the parties and subject. The decree is *res adjudicata* as between such parties, and is a bar to another partition proceeding between the same parties for the same land. It is also conclusive as to the proportion owned by each of the co-tenants. None of

them can afterwards say or maintain that he owned a greater proportion, or a greater undivided interest than that which is adjudged by the decree, however, true such claim may be; because the decree like all other decrees or judgments imports absolute verity as to every fact essential to its existence.

The fact that the parties to such decree were co-tenants, that is either joint tenants or tenants in common in the land according as is alleged in the petition' and adjudged in the decree, it would seem is equally essential to the existence of the decree, and if so it is conclusively settled by it.

It is to be observed that none of our cases decide this question. There is no case we have been able to find in our decisions where the petition for partition embraced lands belonging exclusively to one of the parties, or to the petitioner, and as was the case here, alleged to belong to them all as tenants in common and the decree of partition rendered accordingly.

But the above quotations from our cases indicate that this court would have decided that a decree of partition is *res adjudicata* that the parties thereto were co-tenants in the whole of the land involved in the decree, and estops them from denying such co-tenancy.

This, however, is the first time that the question has been directly presented to this court for decision.

The whole doctrine upon the question is forcibly stated in Freeman on Co-Tenancy and Partition, section 530, thus: "But if a judgment in partition is not conclusive upon the title of the parties, this is only because the title was not according to the law of the state where the partition was made, within the issues made or tendered in the action. The rule that a judgment' is conclusive upon all the issues determined by it, is not less

applicable to judgments in partition than to the judgments in any other form or kind of action. One of the issues which such a judgment ordinarily determines is, that the parties were in possession of the property, holding it as co-tenants. Hence, a party to a partition suit is estopped from showing that at the time of the partition he was holding any part of the premises in severalty adversely to his co-tenants, or that the petitioner had no interest in the property."

A portion of this section of Freeman on Co-Tenancy and Partition was quoted and adopted by this court as a correct statement of the law in *Isbell* v. *Stewart, Admr.,* 125 Ind. 112.

The fact found that the widow was mistaken in her legal rights in the forty-acre tract now in controversy does not help her case any.

So long as the decree stands it must be held to import absolute verity.

We need not and do not decide what effect, if any, her mistake as to her legal rights in the forty-acre tract would have had in an application to set aside the decree on account of said mistake. It is sufficient to say that until it is set aside it must conclude the parties to it as to that matter.

To permit her to collaterally impeach the decree and thereby restore to her what she lost by her mistake for which the other parties to it are in nowise to blame, would operate as a complete destruction of certain rights the other parties had in that part of the lands of which it is confessed they were actually owners in fee and tenants in common with her; and such impeachment of the decree would not only restore to her all she had lost by her mistake, but it would bestow on her the rights thus taken from the other parties. In other words, it would enable her to profit by her own mistake, by her own negligence to

the loss of the other parties who are not chargeable with any mistake or negligence. She put forty acres of land into the common property of which she now asserts she was sole owner in fee simple. She thus increased the size of the allotments to be set apart to each of the co-tenants including her own allotment.

Her allotment as the finding shows was made up entirely of lands in which all the parties were co-tenants before the partition. She got, therefore, in her allotment an amount equal to the averaged value of one-third of forty acres more of the common estate than she would have been legally entitled to if she had made no mistake and had not put the forty acres into the common estate. She now proposes to take away the forty acres from the appellee to whom it was set apart as a part of her allotment, without any offer to restore what she got by means of her mistake off of the other tenants in common, more than she was legally entitled to before the decree. This circumstance alone ought to be sufficient to estop her from collaterally impeaching the decree as she is proposing to do.

This feature of the case is somewhat analogous to the principle decided in *Wiseman* v. *Macy*, 20 Ind. 239, 83 Am. Dec. 316. In that case Barbara Wiseman was the widow of Jacob Wiseman who died in 1851 seized of certain real estate in Indianapolis, leaving his only child Margaret Wiseman and said widow as his sole heirs. Said widow by the statute in force was entitled to dower in said real estate.

She as the legally appointed guardian for her said child, on petition, secured an order of the probate court to sell said real estate, and sold it without making any mention of her dower interest.

She afterwards sought to have her dower therein set off to her, and it was held that she was estopped from setting up such claim by her sale as guardian.

We therefore conclude, both on principle and authority, that the appellant cannot be heard to collaterally impeach the decree, and is estopped thereby from showing that at the time thereof she was holding any part of the premises in severalty adverse to her co-tenants. Hence, the trial court did not err in its conclusions of law. The judgment is affirmed.