## HERITAGE v. HERITAGE.

[No. 7,323. Filed October 8, 1912. Rehearing denied December 31, 1912]

1. PARTITION.—*Judgments.—Conclusiveness.*—A judgment in a partition proceeding is conclusive between the parties, and exempt from collateral attack, as to all matters within the issues. p. 79.
2. PARTITION.—*Implied Warranty.*—The law annexes an implied warranty in all compulsory partitions, between tenants in common, of land derived by inheritance, extending to defects which existed in the title of the common ancestor, whereby each partitioner is made the warrantor of every other to the extent of the portion allotted to him, and cannot, therefore, be permitted to assert an adverse interest or title for the purpose of ousting another party to the same partition from his allotted portion. p. 86.
3. PARTITION.—*Adverse Claim.—Lease.*—Where the lands of the ancestor were apportioned among his heirs by a proceeding in partition, each heir became the implied warrantor of the title of every other as to the portion allotted to each, so that one of the heirs cannot thereafter assert that he has a right, under a lease executed by the ancestor, but which was not set up in any pleading in the partition proceeding, to hold possession of any of the land allotted to one of the other heirs. p. 88.

From Superior Court of Madison County; *H. Clarence Austill,* Judge.

Action by Albert L. Heritage against Oliver Morton Heritage. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*J. E. Hall* and *Chipman, Keltner & Hendee,* for appellant. *Wilkie & Wilkie,* for appellee.

LAIRY, J.—Appellee, who was plaintiff below, brought this action in ejectment against appellant, to recover possession of 51½ acres of land located in Madison county, Indiana. The court made a special finding of facts and pronounced conclusions of law thereon favorable to appellee. Appellant excepted to the conclusions of law at the time, and thereafter the court rendered judgment in favor of appellee. The only error assigned on appeal is that the court erred in its conclusions of law. The facts specially found by the court are, in substance, as follows: that William E. Heritage, the father of plaintiff and defendant, died on the 21st day of October, 1908, the owner of 617 acres of land, of which the land in controversy was a part; that, prior to his death, the father leased to Oliver M. Heritage 151½ acres of said land, which lease was to expire on the first day of March, 1910; that on the 17th day of February, 1909, a granddaughter of said William E. Heritage brought a suit to partition the lands of which her grandfather died seized, making both plaintiff and defendant parties defendant; that both plaintiff and defendant filed answers in general denial to said complaint, and that no averment was contained in the complaint in reference to the lease or tenancy of appellant, and such facts were not presented by any answer filed in the case; that pursuant to the complaint and the issues tendered by the general denials thereto, the court awarded partition, and appointed commissioners to make division of the land, that said commissioners filed their report, setting off to appellant 100 acres of the 151½-acre tract on which he held the lease given him by his father, and setting off to appellee, as a portion of his share in said lands, fifty-one and one-half acres of the tract covered by said lease. On the filing of said report, the court entered judgment confirming the same, which judgment is in part as follows: "That the partition of said real estate so made and reported and as above set out by said commissioners, be and the same is hereby confirmed and made firm, stable and effectual be-

tween the several parties therein named and as above shown, and that each of the parties shall hold the real estate above described so set off and partitioned to them in severalty in fee simple and that the rights of the other parties therein severally be forever severed and partitioned, and that the said several tracts be set off as above shown, and shall be and remain the property of each of said parties severally named, divested of any claim or interest of the other parties to this cause.'' The court further finds that appellant went into possession of said tract of $151\frac{1}{2}$ acres under said lease prior to the death of his father, and sowed a part of the land in controversy to wheat, and at the date of said partition suit said appellant was still in possession of said land, claiming under said lease, and the wheat sown by him was growing on the land; that appellee knew at the time of said partition suit that appellant was in possession of said land and claiming the same under said lease, and also knew that one-half of the wheat growing on said land had been inventoried as a part of the estate of his deceased father, and that the commissioners who made the partition knew that appellant was in possession of said $151\frac{1}{2}$-acre tract; that after judgment in said partition suit, appellee demanded possession of said fifty-one and one-half acres, and that appellant at that time refused and still refuses to deliver possession of the same.

On the foregoing facts the court pronounced the following conclusions of law: ''1st. That the plaintiff has been damaged in the sum of $1. 2nd. That the defendant holds possession of said $51\frac{1}{2}$ acres described in the plaintiff's complaint without right. 3rd. That the plaintiff have immediate possession of said $51\frac{1}{2}$ acres described in the complaint herein.''

The position of appellant is that he has a right under the lease from his father to hold possession of the $51\frac{1}{2}$-acre tract, set off to his brother in said partition suit, until the expiration of said lease; while appellee contends that he is entitled

to the immediate possession of said land under and by virtue of said decree in partition.

It is very clear that the land of the ancestor, William E. Heritage, descended to his heirs subject to the lease in favor of his son Oliver M. Heritage, and that said lease would have remained in full force and effect as against said heirs until it expired, were it not for the judgment in the partition suit, set out in the special finding of facts. The question to be decided is, Did the decree in the partition suit have the effect to terminate the rights of appellant under his lease so far as it affected land set off to other parties to said partition suit? And, Is appellant estopped by said decree from setting up or asserting any claim under said lease?

The rule that a judgment is conclusive between the parties to it on all the issues determined by it applies as well to judgments in partition as to judgments in any other

1. form of action. *Isbell* v. *Stewart* (1890), 125 Ind. 112, 25 N. E. 160; *Brown* v. *Grepe* (1893), 135 Ind. 4, 34 N. E. 312; *Irvin* v. *Buckles* (1897), 148 Ind. 389, 47 N. E. 822; *Wright* v. *Nipple* (1883), 92 Ind. 310; *Eller* v. *Evans* (1891), 128 Ind. 156, 27 N. E. 418; *Doe* v. *Smith* (1849), 1 Ind. *451. In view of these cases, and many more that might be cited, it must be regarded as settled that a judgment in a partition proceeding is exempt from collateral attack as to all matters within the issues in such proceeding. The difficulty arises in determining, according to the decisions of our Supreme Court, what facts are in issue and what facts are not in issue in such a proceeding. The cases all agree that the title to the land sought to be partitioned may be put in issue by appropriate pleadings directly presenting that question for decision, but the difficulty arises in determining how far title is put in issue by the pleadings ordinarily employed in such proceedings.

In the case of *Crane* v. *Kimmer* (1881), 77 Ind. 215, the court, in discussing the question, said: "In all cases of par-

tition, the rights and titles of the parties are required to be set forth in the petition. 2 R. S. 1876, p. 344, §2. This technically puts in issue the title to the land asked to be divided, and, by an answer in denial or otherwise, the title may be put in issue, and be adjudicated; and it is a general principle of the law, that whatever was or might have been adjudicated, under the pleadings in a case, shall be deemed to have been adjudicated, and the doctrine of *res adjudicata* puts a finality to the question. The decree in a partition suit, however erroneous, if the court had jurisdiction, can not be attacked collaterally in a suit in ejectment. *Murphy* v. *Williamson* [1877], 5 Cent. L. J. 116. This decree not only settles and designates the shares of the owners of the land, but equally settles and fixes their then title to the same.'' This case is expressly disapproved and impliedly overruled on this point in the case of *Miller* v. *Noble* (1882), 86 Ind. 527. In that case the court said: ''It is not shown that the question of title was put in issue. There seem to have been only such pleading as are ordinarily employed in partition proceedings, and only such an assertion of title as was sufficient to entitle appellant to partition. The object of the action, so far as this record shows, was solely to secure a division of the land and an allotment of shares. The decree neither settles nor professes to settle any question of title; it does no more than direct partition. As title was not put in issue, and as the decree does not attempt to settle any question of title, the titles of the respective parties were neither weakened nor strengthened. Ordinarily, proceedings in partition do not settle title; at all events they create no new title—they simply divide into separate shares the land as held under existing titles. *Utterback* v. *Terhune* [1881], 75 Ind. 363; *Avery* v. *Akins* [1881], 74 Ind. 283; *Teter* v. *Clayton* [1880], 71 Ind. 237; *Knight* v. *McDonald* [1871], 37 Ind. 463. * * * The appellant presses upon our consideration the case of *Crane* v. *Kimmer* [1881], 77 Ind. 215, and there are some expressions in the opinion

which seem to sustain his theory of the law. In so far as the expressions found in that opinion are in conflict with the cases we have cited, they must be deemed to be incorrect statements of the law.''

In the case of *Green* v. *Brown* (1896), 146 Ind. 1, 44 N. E. 805, it is held that the question of title is not ordinarily in issue in partition proceedings, and that the presumption in such cases is that title is not in issue.

In the later case of *Irvin* v. *Buckles, supra,* it appears that the widow of Wayne Scott, deceased, was the owner of a certain forty-acre tract of land, by reason of the fact that she and her husband held it at the time of his death as tenants by the entireties. She also owned the undivided one-third of 180 acres, of which her husband died seized in his own right. After the death of her husband, the widow brought a suit in partition against the other heirs of her deceased husband, alleging that he died the owner in fee simple of 220 acres of land, described, and in which was included the forty-acre tract owned by said widow. She also alleged that she was the owner in fee simple of the undivided one-third of the lands described, and that her four children were the owners of the undivided two-thirds thereof. Partition was decreed according to the averments of the petition, and sixty acres, including the buildings, were set off to the widow as her full interest in said real estate, and 160 acres were set off to the four children, including the forty-acre tract, which at the time of the death of the ancestor was held by him and his wife as tenants by the entireties. Afterward the 160 acres set off to the four children were partitioned among them, and the forty-acre tract in question was set off in severalty to Jennie Buckles, one of said children. Later, the widow, having intermarried with Hamer Irvin, brought an action in ejectment against Jennie Buckles to recover the forty-acre tract in question, on the theory that she became the owner thereof at the death of her husband,

and that her title was not affected by the proceedings in partition. The trial court held that she could not recover, and this judgment was affirmed on appeal. In the opinion in this case the court reviews the authorities at some length and expresses its conclusions as follows: "From these authorities it is quite clear that while a decree in an ordinary partition proceeding does not conclusively settle any question of title, yet, it is equally clear from them, that some things are conclusively settled and put at rest by the decree. *Wright* v. *Nipple* [1883], 92 Ind. 310; *Fleenor* v. *Driscoll* [1884], 97 Ind. 27. One is, the fact of partition itself, where the court has jurisdiction over the parties and subject. The decree is *res adjudicata* as between such parties and is a bar to another partition proceeding between the same parties for the same land. It is also conclusive as to the proportion owned by each co-tenant. None of them can afterwards say or maintain that he owned a greater proportion, or a greater undivided interest than that which is adjudged by the decree, however true such claim may be; because the decree like all other decrees or judgments imports absolute verity as to every fact essential to its existence. The fact that the parties to such decree were co-tenants, that is either joint tenants or tenants in common in the land according as is alleged in the petition and adjudged in the decree, it would seem is equally essential to the existence of the decree, and if so it is conclusively settled by it. It is observed that none of our cases decide this question. There is no case we have been able to find in our decisions where the petition for partition embraced lands belonging exclusively to one of the parties, or to the petitioner, and as was the case here, alleged to belong to them all as tenants in common, and the decree in partition rendered accordingly. But the above quotations from our cases indicate that this court would have decided that a decree of partition is *res adjudicata* that the parties thereto were co-tenants in the whole of the land

involvd in the decree, and estops them from denying such cotenancy.''

The decision in the case of *Finley* v. *Cathcart* (1898), 149 Ind. 470, 48 N. E. 586, 49 N. E. 381, 63 Am. St. 292, was based on the following state of facts: William Cathcart died the owner of fifty acres of land leaving, as his sole heirs seven children, of whom Mrs. Finley, the appellant, was one. In 1892, after the death of her father, Mrs. Finley purchased from two of the children their undivided two-sevenths of said real estate, and had the deeds properly recorded, and the next year she purchased from her brother, Daniel Cathcart, his undivided one-seventh therein, but failed to have his deed recorded. In 1896, Walter Mabry and Stephen S. Mabry, having acquired the interest of William F. Cathcart, another heir of William Cathcart, deceased, filed a petition for partition, making Mrs. Finley, Daniel Cathcart, John M. Cathcart and Minnie Cathcart defendants, alleging that each plaintiff owned the one-twenty-first part in value of said real estate, and that Mrs. Finley owned three-sevenths and each of the other defendants one-seventh, when the truth was that Mrs. Finley owned four-sevenths and that Daniel E. Cathcart owned no interest in the land, having previously conveyed his undivided interest to his sister Mrs. Finley. All the defendants were duly notified of the pendency of said proceedings, and failed to appear and were defaulted. Thereupon the court decreed partition among plaintiffs and defendants in the shares set out in the petition. Commissioners were appointed, who divided the land accordingly, and set off to Daniel E. Cathcart eleven acres, as his share therein. Mrs. Finley brought an action against Daniel E. Cathcart to quiet her title to eleven acres set off to him in such partition proceeding. The trial court gave judgment for the defendant, and on appeal to the Supreme Court this judgment was reversed, and it was held that appellant was entitled to have the title to the real estate, set off to Daniel E. Cathcart in said partition proceeding, quieted in her.

The decision of this case seems to be in direct conflict with the principle announced in the case of *Irvin* v. *Buckles, supra,* to the effect that a judgment in partition is conclusive on the parties as to the proportion of the land owned by each co-tenant, and that some of said parties can afterwards maintain that they owned a greater proportion or a greater undivided interest than that which is adjudicated by the decree, however true that may be. This principle announced in the case of *Irvin* v. *Buckles, supra,* is not referred to in the case of *Finley* v. *Cathcart, supra,* and no effort is made to reconcile the two decisions. The learned judge who wrote the later of the two cases calls attention to the fact that both plaintiff and defendant were made defendants to the partition proceeding, and that the only issue tendered to them was tendered by the complaint, and that as no cross-complaint was filed by either defendant against the other, alleging the proportion of said real estate that either defendant owned as against the other, no issue on this question was presented by the pleadings as between said defendants. The only legitimate conclusion that can be reached by this course of argument is that the finding of the court, fixing the proportionate shares of the two defendants in that case, was entirely outside the issues presented, and that a decree based thereon was *coram non judice* and absolutely void. The result of such a conclusion would be, that in every partition proceeding, where there are several defendants, and said defendants default or file answers in general denial, and file no cross-complaint as against each other, the court would have no power to go further than to determine and set off to the plaintiff his interest in the land; and that it would have no power under such issues to partition the land among the defendants; and in every case where the court has assumed so to proceed beyond the issues, its judgment is absolutely void, and subject to collateral attack.

The court in the case we are reviewing did not place its decision on the ground that the decree of the court fixing the

proportionate share of each defendant was absolutely void, as being outside the issues, but contented itself with saying on page 481: ''Without further extending this opinion, we are constrained to hold that the petition filed by the Mabrys for partition did not put in issue, between appellant and appellee, the title which the former held by the deed from the latter, and therefore, she is not precluded or estopped by the judgment from asserting, as against appellees, her title to the land in dispute through said deed. We must not be understood as holding that, had appellant, under the circumstances, been satisfied with the share assigned to her, and had accepted and acquiesced in such partition, she would not have thereby confirmed the same, and made it effectual between her and the appellee, nor as to what would be her situation were this controversy between her and an innocent purchaser for value from appellee. These questions are not involved, and therefore not decided.''

We do not think that these two cases can be distinguished or reconciled on the ground that in the later case the question arose between two parties who were both defendants to the partition suit, while in the earlier case it arose between the person who was plaintiff in the partition suit and one of the defendants. We can hardly think that a different conclusion would have been reached in the case of *Irvin* v. *Buckles, supra,* even though it had appeared that a like decree had been rendered in a partition suit in which Mrs. Irvin and Mrs. Buckles had both been defendants, and wherein neither had filed a cross-complaint.

There is an apparent conflict in the decisions of our courts on the question under consideration, and we are unable to deduce therefrom any rule of uniform application on which all of such decisions can be reconciled, but we believe that this case can be properly decided by the application of the principle of the common law, whereby an implied warranty as between co-tenants was annexed to every involuntary partition of lands.

At common law every partition betwen co-parceners had annexed to it an implied warranty, that if, by any defect of title in the ancestor either of the parceners lost any 2. part of his share by eviction, the party affected might defeat the partition, or, at his election, obtain compensation from his co-parceners for the part so lost. *Dugan* v. *Hollins* (1853), 4 Md. Ch. 139; *Morris* v. *Harris* (1850), 9 Gill (Md.) 19; *Patterson* v. *Lanning* (1840), 10 Watts (Pa.) 135, 36 Am. Dec. 154.

In the case at bar, the title of appellant and appellee and the other heirs of William E. Heritage to the real estate partitioned among them was derived by inheritance from the common ancestor. They took as tenants in common, but the interests which they severally took in such land were acquired by descent or act of law, in the same manner as the estates of co-parceners were acquired in England by the rule of the common law. The right to compel partition of lands in England existed only between parceners, until the statutes of 31 Hen. VIII, by which such right was extended to joint tenants and tenants in common. Prior to the passage of this statute, joint tenants and tenants in common could parcel the land among themselves only by agreement, and there was no reason why the law should annex any implied warranty in such cases, because the parties making such partition were perfectly competent to protect themselves against future losses by liens or paramount titles by the terms of the conveyances; but since the right of compulsory partition has been given to tenants in common by statute, the courts have uniformly held that the law annexes an implied warranty in all compulsory partitions, wherein lands derived by inheritance are parcelled among tenants in common. This implied warranty does not, however, apply to partition among tenants in common who have become such by purchase, or in any other way than by descent from a common ancestor, and the warranty which the law implies extends only to defects which existed in the title of such common

ancestor. *Patterson* v. *Lanning, supra; Morrice's Case* (1585), 6 Coke 12; *Venable* v. *Beauchamp* (1835), 3 Dana (Ky.) *321, 28 Am. Dec. 74; *Sawyers* v. *Cator* (1847), 8 Humph. (Tenn.) *225, 47 Am. Dec. 608.

The decisions seem to be in conflict as to whether this implied warranty extends to cases where tenants in common by conveyances voluntarily partition the lands of their ancestor. *Strohecker* v. *Housel* (1872), 3 Clark (Pa.) *327; *Rogers* v. *Turley* (1816), 4 Bibb (Ky.) 355; *Beardsley* v. *Knight* (1838), 10 Vt. 185, 33 Am. Dec. 193; *Huntley* v. *Cline* (1885), 93 N. C. 458; *Venable* v. *Beauchamp, supra; David-son* v. *Coon* (1890), 125 Ind. 497, 25 N. E. 601, 9 L. R. A. 584; *Dawson* v. *Lawrence* (1844), 13 Ohio 543, 42 Am. Dec. 210; *Picot* v. *Page* (1858), 26 Mo. 398; 30 Cyc. 167, and authorities cited.

As the law makes each partitioner the warrantor of every other, to the extent of the portion allotted to him, and as no principle of law is better settled than that a warrantor cannot assert a claim against his own warranty, it clearly seems to follow that no party to a partition can be permitted to assert an adverse claim or title for the purpose of ousting another party to the same partition from the portion allotted to him.

In the case of *Davidson* v. *Coon, supra,* it was held that an heir who joined in a conveyance by which partition was made of the lands descended from his ancestor, could not afterwards maintain an action to subject the land so partitioned to a lien in his favor for an unpaid legacy, which, by the terms of the will of such ancestor, was made a charge on the land. In that case the court said: "The appellee is in this dilemma: If his deed is to have its usual effect it conveys his interest in the land, and releases his lien; if it is not to have its usual effect, it is because it was executed by him as one of several owners in common, but if it was executed by him as one of several owners he cannot assert his lien since that was buried or merged in his character of an owner.

Rossiter *v.* Lake Shore, etc., R. Co.—52 Ind. App. 88.

We are not unmindful of the doctrine that equity will not suffer a merger to take place where injustice would result, but that doctrine the appellee, after having voluntarily assumed the position of a tenant in common, is in no plight to invoke. Equity almost imperiously demands that this lien shall be merged, for no other course will promote justice. At law where the estate of a lienor meets that of the owner in one person, the lien is merged. The rule must govern here, for there is no equity to break its force.''

The lands of William E. Heritage having been apportioned among his heirs by a proceeding in partition, each heir became the implied warrantor of the title of every other

3.   as to the portion allotted to him, and appellant cannot assert, as against the implied warranty which the law imposes, that he has a right under a lease executed by the ancestor to hold possession of any of the lands allotted to appellee.

Judgment affirmed.

NOTE.—Reported in 99 N. E. 442. See, also, under (1) 23 Cyc. 1331; 30 Cyc. 306; (2) 30 Cyc. 311. As to the effect of compulsory partition, see 101 Am. St. 864.